**Robert Carl GAPSKE, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. SD 31404.**

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 9, 2012.

---

Ellen H. Flottman, Columbia, MO, for Appellant.

Chris Koster, Attorney General and Laura E. Elsbury, Assistant Attorney General, Jefferson City, MO, for Respondent.

WILLIAM W. FRANCIS, JR.,
Presiding Judge.

Robert Carl Gapske ("Gapske") appeals the motion court's denial of his Rule 24.035 motion for post-conviction relief after an evidentiary hearing. We affirm.

### Factual and Procedural History

On June 10, 2009, Gapske was charged by felony information with one count of driving while intoxicated, one count of driving while his operator's license was revoked, and one count of failing to drive on the right half of the road. At the plea hearing, Gapske entered an *Alford*[1] plea to

---

1. *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

driving while intoxicated, and under the terms of the plea agreement, the State agreed to drop the other two charges. At the plea hearing, the court thoroughly questioned Gapske regarding his understanding of his plea and the consequences of the plea. Then, the prosecutor explained the range of punishment and factual basis for the charge. Subsequently, the following exchange occurred:

[Gapske's plea counsel]: Your Honor, if I may, the only thing is that we have discussed his parole was revoked because of this allegation. I've reviewed the parole paperwork and the case law, and I believe that he should get credit for all time in custody since then, but I've told him that I can't make any promises as to what [the] [Missouri Department of Corrections] [("DOC")] does. I do think under the law he's entitled to that credit.

BY THE COURT:

Q Your attorney has given you advice, but has anybody else made any promises to you for pleading guilty—or for entering an [Alford] plea, I should say?

A. No, sir.

[Prosecutor]: Your Honor, if I could just interject to add to that, I just want on the record for [Gapske] to just clarify that he understands that his counsel can make no promises regarding eligibility for parole and that that ultimately is the decision of the [DOC]?

BY THE COURT:

Q You do understand that, sir?

A Yes, sir, I do.

Q Did anyone force or threaten you to get you to enter this plea?

A No, sir.

Q Are you pleading guilty because you do believe there's sufficient evidence to find you guilty of the charge of the Class C felony of driving while intoxicated?

A Yes, sir, I do.

Q I understand this plea is pursuant to a plea agreement, which I will mark as Court's Exhibit 1; is that correct, sir?

A Yes.

Q Pursuant to the plea agreement, it says you will receive five years in the [DOC], it will be concurrent with any other sentence you have. Count II, driving while revoked, and Count III, the failure to drive in the right half of the road will be dismissed. There will be a $46 civil judgment for the Crime Victim Compensation Fund. As I understand it, there will be no probation granted. It will be denied. And essentially this is a pleading guilt [sic] for five years. Is that your understanding, sir?

A Yes, sir, with the exception of maybe the parole.

[Gapske's plea counsel]: Right, that's up to the parole board.

BY THE COURT:

Q You understand that?

A Yes, sir.

Gapske waived his right to a Sentencing Assessment Report. The plea court accepted the Alford plea and sentenced Gapske to five years' imprisonment.

On November 19, 2009, Gapske filed a "Motion to Vacate, Set Aside, or Correct the Judgment or Sentence." Gapske's first amended motion, filed on July 6, 2010, alleges that he "was denied effective assistance of counsel" in that his plea counsel advised him "that he would only serve 40% of his sentence" and he "has been required to serve 41 months which is 67% by the Parole Board."

On December 15, 2010, an evidentiary hearing was held. Gapske testified that his plea counsel calculated that he would serve 40 percent of his five-year sentence.

He also testified he never had any conversations with plea counsel regarding the fact the parole board and the DOC were the ones to decide how much time he would serve. Gapske did not call plea counsel to testify.

On May 31, 2011, the motion court denied Gapske's motion for post-conviction relief. The motion court concluded the record clearly reflected that Gapske understood his counsel did not, and could not make any promises to him regarding his eligibility for parole, citing Gapske's own testimony from the plea hearing. The motion court further found Gapske's testimony at the hearing was "not credible."

Gapske's sole point relied on contends the motion court clearly erred in denying his motion because he was denied effective assistance of counsel in that plea counsel misadvised him that he would only be required to serve 40 percent of any sentence imposed and Gapske would have proceeded to trial had he known he would be required to serve more than 40 percent. The issue for our determination is whether the motion court erred in finding Gapske failed to demonstrate that plea counsel's alleged misadvice rendered his plea involuntary and unknowing.

**Standard of Review**

■ Appellate review of the motion court's denial of post-conviction relief is limited to a determination of whether the motion court's findings and conclusions are clearly erroneous. Rule 24.035(k). "The [motion] court's findings and conclusions are clearly erroneous only if, after reviewing the entire record, the appellate court is left with the definite and firm impression a mistake has been made." *State v. Nunley,* 923 S.W.2d 911, 922 (Mo. banc 1996). "At a post-conviction relief evidentiary hearing, the motion court determines the credibility of the witnesses and is free to believe or disbelieve the testimony of any witness, including that of the Movant." *Hurst v. State,* 301 S.W.3d 112, 117 (Mo.App. E.D. 2010).

**Analysis**

■ In order to prevail on a claim of ineffective assistance of counsel, a movant must show: "(1) Counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise in similar circumstances, and (2) Counsel's failure prejudiced Movant." *Rivera v. State,* 106 S.W.3d 635, 638 (Mo. App. S.D.2003); *see Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Because Gapske's conviction resulted from a negotiated plea of guilty, a claim of ineffective assistance of counsel is immaterial except to the extent that it infringes upon the voluntariness and knowledge with which the plea was made. *Moore v. State,* 207 S.W.3d 725, 729 (Mo.App. S.D.2006). Accordingly, Gapske must prove by a preponderance of the evidence that, but for plea counsel's unprofessional errors, there is a reasonable probability he would have insisted on going to trial instead of pleading guilty. *Id.*

■ It is not required that a defendant be informed about eligibility for parole for a plea to be entered voluntarily and intelligently; however, there is authority for the proposition that misinforming as opposed to failing to inform a defendant about eligibility for parole may undermine the voluntariness of the plea. *Reynolds v. State,* 994 S.W.2d 944, 946 (Mo. banc 1999). "'The expectation that a [movant] will receive a lesser sentence or a disappointed hope of a lesser sentence does not make a plea involuntary.'" *Jones v. State,* 211 S.W.3d 210, 213 (Mo.App. S.D.2007) (quoting *Redeemer v. State,* 979 S.W.2d 565, 572 (Mo.App. W.D.1998)).

■ Upon examination of the record, particularly the transcript of the plea hearing, this Court is convinced Gapske understood his counsel did not, and could not make any promises to him regarding his eligibility for parole. The prosecutor specifically sought clarification to ensure that Gapske understood that Gapske's "counsel can make no promises regarding eligibility for parole and that that ultimately is the decision of the [DOC]." Gapske responded that he understood this. Further, after a series of additional questions regarding Gapske's understanding of the consequences of his plea, Gapske agreed that he understood that pursuant to the plea agreement he would receive five years in the DOC. Gapske stated: "Yes, sir, with the exception of *maybe* the parole." (Emphasis added). In response, the prosecutor again clarified: "Right, that's up to the parole board." Gapske stated he understood.

The only contrary evidence was Gapske's testimony at the evidentiary hearing that, based on counsel's misadvice, he believed he was only going to serve 40 percent of his five-year sentence in the DOC. The motion court explicitly found this testimony not credible in light of Gapske's testimony at the plea hearing affirmatively stating he understood his counsel could make no promises regarding eligibility for parole, and that it was up to the parole board to make that decision. The motion court was free to disbelieve such testimony. *Hurst,* 301 S.W.3d at 117.

A review of the record does not leave us with the definite and firm impression that a mistake has been made. The motion court did not err in concluding Gapske failed to demonstrate that plea counsel's alleged misadvice rendered his plea involuntary and unknowing. Gapske's point is, therefore, denied.

The judgment of the motion court is affirmed.

BATES, and SCOTT, JJ., Concur.